**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **ALAN J. HAYES,**<br>**doing business as WETT,**<br><br>          **Plaintiff,**<br><br>     **v.**<br><br>**FM BROADCAST STATION**<br>**WETT(FM), et al.,**<br><br>          **Defendants.** |

**Civil Action 12-740 (RC)**

**MEMORANDUM OPINION**

The plaintiff in this case brings suit against a radio station whose call sign, he claims, infringes on his trademarks. There are difficult questions regarding the viability of that claim and this court's subject matter jurisdiction to hear it, but the plaintiff has not established the court's personal jurisdiction over the defendants. The court will therefore dismiss his case rather than reaching those larger issues.

**I. BACKGROUND**

Alan Hayes, the plaintiff in this case, alleges that he owns, uses, and has registered a U.S. trademark for "WETT" in the class of telecommunications (that is, international class 38). Am. Compl. ¶¶ 9–11. He also claims ownership of a common-law mark for "WETT" for Internet radio broadcasting and radio broadcasting. *Id.* ¶ 8. Mr. Hayes has his principal place of business in Maryland. *Id.* ¶ 1.

Mr. Hayes has brought suit against the Withers Broadcasting Company of Bridgeport, LLC ("Withers"). He alleges that Withers, which is based in Bridgeport, West Virginia, owns a radio station with the call letters "WETT," which broadcasts out of Bridgeport at 104.1 FM. *Id.*

¶¶ 3–4, 25–29.  Mr. Hayes has named that radio station as a co-defendant.  According to the complaint, Withers has registered the "WETT" call sign with the Federal Communications Commission, and has employed a lawyer based in Washington, D.C. to conduct its business with the FCC.  *Id.* ¶¶ 15–22.  Mr. Hayes also alleges that Withers operates a website for the radio station, from which users can communicate with station staff, "access Morning Show Prizes," and "purchase discount tickets."  *Id.* ¶¶ 28–29.  That website is, of course, accessible in the District of Columbia.

Mr. Hayes alleges that Withers and the radio station that it owns have violated his rights in his "WETT" trademark under both the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the common law.  The defendants have moved to dismiss the complaint for lack of personal jurisdiction and subject matter jurisdiction, improper venue, and failure to state a claim on which relief can be granted.  Because the court finds that it lacks personal jurisdiction over the defendants, it need not reach their other arguments.

## II.  LEGAL STANDARD

The plaintiff bears the burden of establishing personal jurisdiction over each defendant.  *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  On a motion to dismiss for lack of personal jurisdiction, a court may consider evidence outside of the pleadings.  *See Mwani v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).  Although the court must resolve any factual discrepancies in favor of the plaintiff, *Crane*, 894 F.2d at 456, "[b]are allegations and conclusory statements are insufficient."  *Johns v. Newsmax Media, Inc.*, 2012 WL 3637147, at *2 (D.D.C. Aug. 24, 2012); *see Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).

### III.  ANALYSIS

**A. Personal Jurisdiction**

"A personal jurisdiction analysis requires that a court determine whether jurisdiction over a party is proper under the applicable long-arm statute and whether it accords with the demands of due process."  *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995); *accord GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  When a federal question case is brought in this court and "there is no applicable federal long-arm statute, jurisdiction . . . must be determined by reference to District of Columbia law."  *Ferrara*, 54 F.3d at 828; *accord GTE New Media*, 199 F.3d at 1347; *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991).

The plaintiff argues that the court can exercise personal jurisdiction by virtue of D.C. Code §§ 13-423(a)(1), (a)(3), and (a)(4).  As relevant here, the statute provides:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
>
>> (1) transacting any business in the District of Columbia;
>>
>> . . .
>>
>> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>>
>> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

Only "specific jurisdiction" is authorized by this section, *see Koteen v. Bermuda Cablevision*,

*Ltd.*, 913 F.2d 973, 974–75 (D.C. Cir. 1990) (per curiam); *Wills v. Wills*, 655 F.2d 1333, 1336 (D.C. Cir. 1981), and the plaintiff does not argue that the court may exercise "general jurisdiction" under D.C. Code § 13-334(a), which provides for such jurisdiction over a foreign corporation "doing business in the District."

### i. Government Contacts

Mr. Hayes first argues that the court can exercise personal jurisdiction over the defendants by virtue of their D.C. lawyer's interactions with the Federal Communications Commission. The defendants do not dispute that submitting reports and applications to the FCC is "transacting business" within the meaning of D.C. Code § 13-423(a)(1). Instead they argue that business transacted with the federal government generally does not give rise to personal jurisdiction in the courts of the capital. Because of "the 'unique character of the District as the seat of national government and . . . the correlative need for unfettered access to federal departments and agencies for the entire national citizenry,'" the District of Columbia Court of Appeals has "held that 'entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction.'" *Companhia Brasileira Carbureto de Calcio—CBCC v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1131 (D.C. 2012) (quoting *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc)). Although this court has said that "[s]tated simply, a party's contacts with government agencies do not enter the jurisdictional calculus," *LG Display Co. Ltd. v. Obayashi Seikou Co., Ltd.*, 2013 WL 314760, at *6 (D.D.C. Jan. 28, 2013), there may be complexities in the government contacts doctrine that are not captured by that simple formulation. The D.C. Circuit and the D.C. Court of Appeals have both

4

noted the uncertainty surrounding the government contacts exception to personal jurisdiction.

See *Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*, 640 F.3d

369, 371 (D.C. Cir. 2011) ("The scope of the government contacts exception is unsettled . . .

under the D.C. Court of Appeals' precedents."); *Companhia Brasileira*, 35 A.3d at 1133 n.5.[1]  It

_____

[1]  For a discussion of the history of the government contacts principle, which began as an interpretation of an earlier version of the D.C. long-arm statute, see *Lex Tex Ltd., Inc. v. Skillman*, 579 A.2d 244, 246–47 (D.C. 1990), and *Rose v. Silver*, 394 A.2d 1368, 1373 (D.C. 1978).  The long-arm statute was amended in 1970.  Pub. L. No. 91-358, § 132(a), 84 Stat. 549.  In *Environmental Research*, the en banc D.C. Court of Appeals held that the government contacts principle survived that amendment.  355 A.2d at 813.  The court said that the doctrine "finds its source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry," explaining that "[t]o permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum."  *Id.*  The court suggested that some version of the government contacts principle was required by the First Amendment.  *Id.* at 813 n.11.

Two years later, a panel of the D.C. Court of Appeals perceived an unresolved tension in its *Environmental Research* opinion.  The *Rose* court suggested two possible interpretations of the government contacts principle.  On the one hand, the doctrine could be a gloss on constitutional due process.  If that were so, it would simply mean that when government contacts were not "minimum contacts" sufficient to satisfy the Fifth Amendment, then personal jurisdiction was unavailable.  On the other hand, the government contacts principle might provide an exemption from jurisdiction in some cases where "minimum contacts" had been established.  394 A.2d at 1373.  The *Rose* court concluded that such an exemption does exist, that "the First Amendment provides the only principled basis" for it, and that to invoke the government contacts principle in a case where minimum contacts had otherwise been established would therefore require a defendant to show "that long-arm jurisdiction would violate the First Amendment."  *Id.* at 1374.  In doing so it seemed to narrow the scope of the en banc decision in *Environmental Research*, which had said that "jurisdiction over nonresidents" could not be based on their "dealing[s] with a federal instrumentality."  355 A.2d at 813.  The *Rose* court suggested that such dealings *could* give rise to jurisdiction if they established minimum contacts and were not protected by the First Amendment.  Two judges dissented from the denial of the petition to hear *Rose* en banc, with Judge Harris (who wrote the opinion in *Environmental Research*) stating that "in my view, the division opinion [in *Rose*] is directly in conflict with *Environmental Research* (as well as with all other relevant authority)."  *Rose v. Silver*, 398 A.2d 787, 787 (D.C. 1979) (Harris, J., dissenting).

is, however, clear that the doctrine at least precludes personal jurisdiction that would be predicated on the submission of non-fraudulent petitions (within the meaning of the First Amendment) to the federal government.  *See Companhia Brasileira*, 35 A.3d  at 1132–35.

Mr. Hayes does not argue that the defendants were doing anything other than petitioning the FCC within the meaning of the First Amendment, nor that those petitions were fraudulent. Instead, he asserts that there is an "agent exception" to the government contacts doctrine—that hiring an agent to petition the federal government subjects one to jurisdiction in the District, even if personally petitioning would not.  That argument is contradicted by the plain text of the long-arm statute, which applies equally to one "who acts directly or by an agent."  D.C. Code § 13-423(a).  But Mr. Hayes insists that *Rose v. Silver*, 394 A.2d 1368 (D.C. 1978), establishes the "agent exception" that he describes. To parse his argument requires a brief review of the two cases from which the modern government contacts doctrine emerged.

In *Environmental Research*, a District of Columbia consulting firm brought suit against

---

The conflict between *Rose* and *Environmental Research*, which was first noted by the D.C. Circuit in 1983, has never been fully resolved.  *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786 (D.C. Cir. 1983) (stating that, since *Rose* "the court has failed to clarify any possible conflict" between the two opinions).  The D.C. Circuit has twice certified a question about the scope of the government contacts principle rather than attempt to apply the doctrine itself.  *See Companhia Brasileira*, 640 F.3d at 373 (certifying question); *Lex Tex*, 579 A.2d at 248–49 (responding to certified question).  When it did so most recently, the Circuit explained that the apparent holding in *Environmental Research*—" that entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction," *Companhia Brasileira*, 640 F.3d at 372 (quoting *Environmental Research*, 355 A.2d at 813)—was not "the end of the case law," because the *Rose* "panel may have limited the government contacts exception to cases in which the contacts with the federal government were an exercise of First Amendment rights," *id.*  In response, the D.C. Court of Appeals acknowledged that *Rose* had "generated controversy and uncertainty," but "d[id] not attempt to resolve that uncertainty."  *Companhia Brasileira*, 35 A.3d at 1133 n.5 (citations omitted).  Instead it explicitly left open the question of whether "rationales apart from the First Amendment support the government contacts doctrine."  *Id.*

two foreign corporations that had hired it to help prepare an application to be submitted to the

United States Environmental Protection Agency.  The D.C. Court of Appeals concluded that the

consulting firm's activities in the District could not form the basis for personal jurisdiction, in

part because the firm was an independent contractor rather than an agent of its clients.  *See*

*Envt'l Research*, 355 A.2d at 812 n.7.  The court then turned to the clients' other contacts with

the District, which consisted of visits by officials of the client corporations to consult with EPA

staff.  The court held that those "government contacts" did not support personal jurisdiction,

either.  *Id.* at 813.

In *Rose*, a Colorado lawyer brought suit against his clients, a Connecticut corporation and

its president.  The clients had hired the lawyer to represent them before the Food and Drug

Administration, authorizing him to rent an office and an apartment at the company's expense.

He moved to the District of Columbia and did so.  He was apparently successful in persuading

the FDA to adopt the company's position.  After the representation had ended, there was a

dispute over legal fees.  The lawyer sued his clients in the Superior Court for the District of

Columbia, which dismissed the case for lack of personal jurisdiction.  *Rose*, 394 A.2d at 1369.

The D.C. Court of Appeals reversed, explaining that, unlike the consulting firm in

*Environmental Research*, the lawyer who brought suit in *Rose* was the agent of his clients, and

that the clients had therefore been vicariously "transacting business" in the District by means of

the lawyer.  *Id.* at 1371–72.  "Thus, since the plaintiff's claim arose out of business vicariously

transacted by the defendants in the District, the defendants were reachable under the 'long-arm'

statute 'consistent with traditional due process analysis.'"  *Lex Tex Ltd. v. Skillman*, 579 A.2d

244, 248 (D.C. 1990) (discussing and quoting *Rose*, 394 A.2d at 1373).  The court then turned to

7

the question of whether the lawyer, "despite being an agent transacting business in the District within the usual meaning of that concept, is nevertheless precluded from obtaining jurisdiction over [his former clients] by virtue of the 'government contacts' principle." *Rose*, 394 A.2d at 1372. The *Rose* court did not answer that question, but suggested that the answer would turn on whether subjecting the former clients to jurisdiction would violate their First Amendment rights; it remanded the case for consideration of that question. *Id.* at 1374.

The salient difference between *Environmental Research* and *Rose* is that the consulting firm in the former case was an independent contractor, whose clients therefore did not act vicariously through it, while the lawyer in the latter case was an agent for his clients. Because the clients were acting vicariously through their lawyer, his actions in the forum were effectively their actions. The actions of an agent, *Rose* teaches, can give rise to personal jurisdiction over the principal so long as those actions are not "government contacts." There is no suggestion, in *Rose* or elsewhere, that actions taken by an agent can give rise to jurisdiction over the principal *even if* they are "government contacts," *see Lex Tex*, 579 A.2d at 249 (discussing *Rose*), and Mr. Hayes offers no citations beyond *Rose*. He has therefore failed to establish that personal jurisdiction can be based upon the interactions between the defendants' lawyer and the FCC—and personal jurisdiction is his burden to establish. *Edmond*, 949 F.2d at 424; *see also Citadel Inv. Group, LLC v. Citadel Capital Co.*, 699 F.2d 303, 308 (D.D.C. 2010).

8

### ii.  The Defendants' Website

Mr. Hayes next argues that the defendants' website allows this court to exercise specific personal jurisdiction over them.  The defendants respond, in effect, that he has alleged only that District residents *can* access the website, not that they actually *do*—much less that the defendants are "transacting . . . business in the District of Columbia" by means of their website, D.C. CODE § 13-423(a)(1).[2]

"With limited exceptions," notably the government contacts doctrine discussed above, "the Code's 'transacting any business' clause has been interpreted to provide jurisdiction to the full extent allowed by the Due Process Clause." *Ferrara*, 54 F.3d at 828; *accord Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004).  "Consequently, the statutory and constitutional questions, which are usually distinct, merge into a single query here." *Ferrara*, 54 F.3d at 828.  That query is whether the plaintiff has adequately alleged, *see Edmond*, 949 F.2d at 424 (citing *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)), that the defendants, through their website, "purposefully established 'minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice,"'" *Helmer*, 393 F.3d at 205 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))) (alteration in original).  "[I]t is essential . . . that there be some act by which the defendant

---

[2]  The defendants argue that, in order for their website to give rise to jurisdiction in this forum, District residents must use the website in a "continuous and systematic" way.  Defs.' Mot. [Dkt. #12-1] at 9–10.  That standard applies to claims of general jurisdiction under D.C. Code § 13-334(a).  *See FCI Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1092 (D.C. Cir. 2008); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509–13 (D.C. Cir. 2002).  As noted above, the plaintiff argues only for specific jurisdiction in this case.

purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he defendant's conduct and connection with the forum . . . [must be] such that he should reasonably anticipate being haled into court there.").

It is Mr. Hayes's burden to "allege specific acts connecting [the] defendant with the forum." *First Chicago*, 836 F.2d at 1378 (quoting *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n.5 (9th Cir. 1980)) (alteration in original). But Mr. Hayes does not allege that the defendants purposefully availed themselves of the District of Columbia any more than they availed themselves of every other jurisdiction in which their website was accessible. As the Circuit has held, "personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites." *GTE New Media*, 199 F.3d at 1349. The theory that "mere accessibility of the defendants' websites establishes the necessary 'minimum contacts' with this forum. . . . simply cannot hold water" because "under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country." *Id.* at 1350.

Mr. Hayes argues that he is entitled to jurisdictional discovery without plausibly alleging purposeful availment of the forum, because only such discovery could show whether the defendants are transacting business in the District via their website. That is not the law. "In order to engage in jurisdictional discovery, the plaintiff 'must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant.' Such a request for jurisdictional discovery cannot be based on mere conjecture or

speculation." *FCI Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1093–94 (D.C. Cir. 2008)

(quoting *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir.

1998)).  After making plausible allegations connecting the defendants to the forum, Mr. Hayes

would be entitled to discovery so that he could prove them.  But he is not entitled to

jurisdictional discovery just because he hopes that it might turn something up.

### iii.   Other Sources of Personal Jurisdiction

Mr. Hayes cites D.C. Code §§ 13-423(a)(3) and (a)(4), but he does not make any

argument that those provisions allow for personal jurisdiction on the facts alleged.  In any case,

they do not.  Sections 13-423(a)(3) and (a)(4) both allow for personal jurisdiction over a

defendant who "caus[es] tortious injury in the District of Columbia."  "Courts have taken several

different approaches in positioning where a plaintiff's injury occurs in cases," such as this one,

which involve allegations "of trademark infringement and unfair competition."  *Citadel*, 699 F.

Supp. 2d at 313.  "Some courts assert that 'in cases of trademark infringement and unfair

competition, the wrong takes place . . . where the passing off occurs, i.e., where the deceived

customer buys the defendant's product in the belief that he is buying the plaintiff's.'"  *Id.*

(quoting *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956), and collecting

other cases) (alteration in original).  "Other courts conclude that the place of injury in a

trademark case is the forum where a plaintiff 'mainly' uses the trademarks at issue—defined

alternatively as the place where the plaintiff does the majority of its business or the state where

the plaintiff's primary office is located."  *Id.* (collecting cases).  Mr. Hayes has not alleged

"tortious injury in the District of Columbia" under either theory.  He has not alleged that any

sales were made in the District, nor that he "mainly" uses the trademark "WETT" in this forum,

11

nor that his primary office is located here.  He therefore has not established that D.C. Code §§ 13-423(a)(3) or (a)(4) authorize this court's jurisdiction over the defendants.

Because Mr. Hayes has not met his burden of establishing this court's personal jurisdiction over the defendants, the court will grant the defendants' motion to dismiss his case.

### B.  Attorney Fees

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  The defendants argue that this is such an exceptional case and they are prevailing parties.  The question of whether a party that wins a dismissal for lack of personal jurisdiction has prevailed for the purpose of attorney fees is currently unsettled.  Although the D.C. Circuit has held that a court may award fees under 15 U.S.C. § 1117(a) to a litigant who has won a dismissal for improper venue, *see Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 524 (D.C. Cir. 1985)—a holding that would presumably also apply to dismissals for lack of personal jurisdiction—that case may no longer be good law.  *See Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598 (2001); *District of Columbia v. Jeppsen ex rel. Jeppsen*, 514 F.3d 1287, 1290–91 (D.C. Cir. 2008) (discussing the tension between *Noxell* and *Buckhannon*).  Some circuits have held that, after *Buckhannon*, a defendant "prevails" only if it succeeds on the merits; the D.C. Circuit has noted the issue but not yet addressed it.  *Jeppsen*, 514 F.3d at 1290 (citing *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 164–65 (1st Cir. 2007); *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 101–02 (2d Cir. 2006)).  The court need not resolve the question, because it concludes that this is not an "exceptional case" within the meaning of the Lanham Act.

"Congress and the federal appellate courts have provided minimal guidance as to what

constitutes an 'exceptional' case under" the Lanham Act.  *Newborn v. Yahoo! Inc.*, 437 F. Supp. 2d 1, 7 (D.D.C. 2006); *see also Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 825 (9th Cir. 1997) ("The Lanham Act nowhere defines what makes a case 'exceptional.'").  In *Noxell*, the D.C. Circuit suggested that "'exceptional,' as Congress used the word in . . . the Lanham Act, is most reasonably read to mean what the word is generally understood to indicate—uncommon, not run-of-the-mine." *Noxell*, 771 F.2d at 526.  "Something less than 'bad faith' . . . suffices to mark a case as 'exceptional.'"  *Id.*

Whatever the precise contours of the phrase, it does not encompass this case.  Mr. Hayes misunderstood an unsettled area of D.C. personal jurisdiction law; because of the government contacts doctrine, his case must be dismissed.  As the discussion above should demonstrate, to misconstrue that doctrine is nearer the rule than the exception.  Moreover, the defendants have not shown that the case was brought in the District of Columbia for the purpose of harassing them.  *Cf. Noxell*, 771 F.2d at 526–27 (suit brought in D.C. against small business based in California and doing most of its business there was "exceptional").  Nor have they demonstrated "economic coercion" on the part of the plaintiff, *id.* at 526, nor that litigating in the District "entailed not merely inconvenience but hardship" for them, *id.* at 527.  This is a run-of-the-mill case, brought in an arguably—though not actually—appropriate jurisdiction.  The defendants' motion for attorney fees will therefore be denied.

## IV. CONCLUSION

For the reasons set out above, the defendants' motion to dismiss the case for lack of personal jurisdiction will be granted, and their motion for attorney fees denied.

Rudolph Contreras
United States District Judge

Date: March 18, 2013